IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| CRAZY ATV, Inc. | REPORT AND RECOMMENDATION |
| Plaintiff, | Case No. 1:13-cv-00114-RJS-DBP |
| v. | District Judge Robert J. Shelby |
| KEVIN MATTHEW PROBST, VINYL ACCESS, LLC, | Magistrate Judge Dustin B. Pead |
| Defendants. | |

## I.    INTRODUCTION

This copyright infringement matter was referred to the court under 28 U.S.C. § 636(b)(1)(B).  (Dkt. 18.)  Plaintiff is Crazy ATV, Inc. Defendants are Kevin Matthew Probst and Vinyl Access, LLC. On July 3, 2014, the district court issued a permanent injunction against Probst and Vinyl Access. (Dkt. 24.) This permanent injunction remains in effect.[1] (*See, e.g.*, Dkt. 64.) The injunction prohibits Defendants and their "respective agents, employees, officers, successors, licensees, and assigns, and all persons acting in concert or participation with" them from "making any further complaints" to any resellers of Crazy ATV's ("Plaintiff" or "CATV") products, or contacting resellers in an effort to interfere with CATV's economic relations. (Dkt. 24.) The injunction also required Probst and Vinyl Access to "[f]ormally withdraw, in writing, all complaints filed against CATV with Amazon.com, Etsy.com, eBay.com, and any other reseller of Plaintiff's products to which a complaint has been submitted regarding CATV's

---

[1] Defendant Probst filed an appeal of this injunction with the Tenth Circuit, but that appeal was dismissed for lack of prosecution. (Dkt. 47–49, 62.)

account and/or products." (*Id.*)  This court previously recommended the district court compel Probst to comply with the injunction, and provide certification that he had done so. (Dkt. 57.) The district court adopted that recommendation and ordered Probst to certify that he had withdrawn all complaints filed against Plaintiff with Amazon.com, Etsy.com, eBay.com, and any other reseller of Plaintiff's products. (*See* Dkt. 61.) The court now considers Plaintiff's renewed motion to compel compliance with the permanent injunction and for contempt sanctions. (Dkt. 69.). Probst submitted several items apparently intended as an opposition to Plaintiff's motion. These items have been docketed. (Dkt. 71.) Probst subsequently sent another set of documents via mail to the court. The district court has already admonished Probst that he may not mail documents to chambers to effect filing. (*See* Dkt. 68 at 1 n.1.) Accordingly, this court declines to docket Probst's mailing. These materials are duplicative of Probst's other filings. The materials are appended to this report and recommendation to complete the record, but otherwise will be returned to Probst without consideration.

## II.    PLAINTIFF'S RENEWED MOTION TO COMPEL COMPLIANCE WITH PERMANENT INJUNCTION AND FOR CONTEMPT ORDER

### a.    Request for contempt sanctions

The court begins with a discussion of its somewhat circumscribed powers over civil contempt proceedings. In a matter referred to a magistrate judge under 28 U.S.C. 636(b) in which the magistrate judge believes an act of civil contempt has been committed:

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C.A. § 636(e). In certifying the facts under Section 636(e), the magistrate judge's role is "to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008). Before a district court may impose contempt sanctions, it must first hold an evidentiary hearing to make de novo factual determinations, including relevant credibility determinations. *Id.* (citing *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888 (3d Cir. 1992). With this court's role thus defined, it turns now to the standard for civil contempt proceedings.[2]

"In a civil contempt proceeding, the complainant 'has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order.'" *Bad Ass Coffee Co. of Hawaii v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp. 2d 1252, 1256 (D. Utah 2000). The first and second requirements do not appear disputed. Probst became aware of the district court's permanent injunction shortly after it was entered.[3] The issue here is whether Probst has complied with that order.

1. Complaints made by Probst personally

"[A] district court is justified in adjudging a person to be in civil contempt for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered." *Id.* (citing *Goluba v. School District of Ripon*, 45 F.3d 1035 (7th Cir. 1995). Probst has not been reasonably diligent or energetic in complying with the portion of the district court's July 3 Order requiring him to "[f]ormally withdraw, in writing, all complaints filed against CATV with Amazon.com, Etsy.com, eBay.com, and any other reseller of Plaintiff's products to which a complaint has been

---

[2] Plaintiff also suggests Probst has committed criminal contempt. The court does not find that a criminal referral for contempt is warranted on the facts presented, though such referral may later become appropriate if Probst's contumacious behavior continues or worsens.

[3] Probst attempted to set that order aside on July 16, 2014. (*See* Dkt. 26.) Accordingly, he had notice of the order at least by that time.

submitted regarding CATV's account and/or products." (Dkt. 24.) Nor has Prost adequately complied with the district court's subsequent order compelling Probst to certify that the formal withdrawal had been accomplished. (*See* Dkt. 61.).

First, Probst submitted nothing that might indicate he attempted to withdraw the complaints until he was compelled to do so. The district court entered its order, including the injunction, on July 3, 2014. This injunction required Probst to withdraw all complaints with the entities identified above. (*See* Dkt. 24.) Yet, Probst apparently made no effort to withdraw the complaints as ordered. On July 21, 2014, Plaintiff filed a motion to compel compliance with the injunction. (Dkt. 27.) On March 4, 2015, this court recommended that the district court grant Plaintiff's motion to compel compliance with the injunction. (Dkt. 57.) The district court adopted that report and recommendation on March 23, 2015. (Dkt. 61.) There is no evidence that Probst attempted to withdraw his complaints before he was compelled to do so. Further, after the district court compelled compliance, Probst made only a single anemic effort via email to withdraw his complaints. Probst sent an email dated March 29, 2015, to each entity mentioned in the district court's order: Amazon.com, eBay.com, and Etsy.com. (Dkt. 66 at 7.) The email states:

> I Kevin Probst, withdraw all complaints that I, Kevin Probst, have filed against Crazy ATV on the following Platforms: Amazon.com, eBay.com, Etsy.com. Any complaints filed by Kevin Probst are withdrawn. Please note, for your records, the email addresses that this email was sent to.

(*Id.* (capitalization normalized)) While this might appear to be a step towards compliance, Probst obfuscated when he responded to inquiries made regarding this email. *See infra*, Part II.b.2.A. Additionally, Probst's mandate was to formally withdraw the complaints in writing, not send a cursory email. To the extent this email evidences any attempt to comply with the district court's orders, it is inadequate. Probst has not offered evidence of any further attempt to withdraw his complaints.

Next, it is difficult to decipher from Probst's various filings whether he has attempted to certify to the court that he has formally withdrawn these complaints. Probst submitted a copy of his emails and a document asserting he should not be held in contempt. (Dkt. 66.) Probst also argues that he complied with the court's order. (*See* Dkt. 71 at 2.) These statements are not an explicit certification to the court that Probst has complied with the injunction in the July 3 Order as he was subsequently compelled to do. (*See* Dkt. 61.) Given that Probst is representing himself, it is not clear if his statements represent argument or certification. Standing in isolation, an ambiguous attempt at certification alone might not bear on contempt, but in context, Probst's email and statement in his filings evidence a failure to adequately comply with the district court's command. Moreover, any claim of compliance is belied by the evidence that Probst made complaints using pseudonyms, which he has not attempted to withdraw. *See infra* Part II.a.2.

Additionally, Probst has also acted antagonistically with Plaintiff's counsel via email. According to counsel's affidavit, Probst wrote an email stating: "This is a very simple concept [counsel], and I know that you must have some degree of intellect to have passed the bar. So I encourage you to use that intellect." (Dkt. 69, Ex. A.) Probst continues, "I'll ask you not to waste any[ ]more of my time with this nonsense based on your ludicrous assumptions and absolutely no facts." (*Id.*) This is a continuation of the conduct that Probst engaged in previously, as discussed in this court's March 4, 2015 Report and Recommendation. (Dkt. 57 (stating the court did not condone of language such as: "I swear you will not recover from that. You will regret it forever. This is the end of our communication and your business.")) Unfortunately, the court's disapproval of Probst's conduct appears to have been insufficient motivation for Probst to end it. This conduct further underscores Probst's lack of diligence, if not disinterest, in complying with the permanent injunction and order to compel.

Based on Probst's lack of sincere effort and antagonistic attitude, Plaintiff has made a prima facie showing that Probst is in contempt of the permanent injunction and subsequent order to compel requiring him to withdraw complaints he submitted personally. Unfortunately, his purported contumacious behavior does not end there.

2.   Complaints made by Probst using pseudonyms

Plaintiff has provided sufficient evidence to persuade this court that Probst made several complaints using pseudonyms. First, Plaintiff received a copyright complaint made against its vendor account on Etsy.com on September 22, 2013, from a user called "onegour." On September 26, 2013, onegour again contacted Plaintiff and provided a list of Plaintiff's products that onegour claimed violated onegour's copyrights. (Dkt. 22, Ex. B at 6.) Etsy.com provided a subpoena response indicating that user onegour (name provided as Randy Geister) logged in to Etsy.com from IP address 75.76.33.105 on September 26, 2013, at 11:28 p.m. Eastern Daylight Time ("EDT"); and from IP address 24.214.141.46 on September 22, 2013, at 3:04 p.m. EDT. (Dkt. 22, Ex. B at 4–5.) Probst's Internet service provider, Knology, Inc., provided a subpoena response indicating that Probst was assigned the IP address 75.76.33.105 from 10:46 p.m. EDT on September 26, 2013, until 11:16 p.m. EDT the following day. (Dkt. 22, Ex. C at 7.) The same subpoena response indicates that Probst was assigned the IP address 24.214.141.46 from 2:11 p.m. EDT on September 22, 2013, until the afternoon of the following day. (*Id.*)

Additionally, Etsy identified user onegour's email address as "onegour@gmail.com." (Dkt. 22, Ex. 1 at 4.) In response to Plaintiff's subpoena, Google.com provided login information related to the email address onegour@gmail.com. (*See id.* at 8–9, 12.) Google.com indicated that the onegour@gmail.com email account was accessed by the same IP addresses mentioned above at the times Probst had been assigned those IP addresses. Google indicated that IP address

24.214.141.46 accessed the onegour@gmail.com email account at 2:23 p.m. EDT[4] on September 22, 2013, and that IP address 75.76.33.105 accessed the email account at 10:59 p.m. EDT on September 26, 2013. As discussed above, Probst's Internet service provider confirmed that Probst had been assigned these IP addresses during the given times. (*See* Dkt. 22, Ex. 2 at 5, 7.)

Plaintiff also submitted documents provided by Amazon.com in response to Plaintiff's subpoena. These documents appear to contain a complaint made by Randy Geister using the email address onegour@gmail.com. (Dkt. 22, Ex. 1 at 16, 18–19.) Plaintiff submitted documents from eBay.com, but the court is unable to identify a particular complaint that can be attributed to Probst. (Dkt. 22 at 20–28.) Based on the foregoing, the court is persuaded that Probst has not complied with the district court's commands. (*See* Dkt. 24; Dkt. 61.)

Probst claims that he is not responsible for submitting these complaints and thus he cannot withdraw them. (Dkt 71 at 2–3.) A party resisting a motion for contempt sanctions who claims inability to comply with a court's mandate has the burden to produce specific evidence of his inability to comply. *See Heinold Hog Mkt., Inc. v. McCoy*, 700 F.2d 611, 615 (10th Cir. 1983) (finding that a movant "need prove only that the defendant has failed to comply with a valid court order. It need not prove that the [nonmoving party] is able to comply."). Probst provides no such evidence. Instead, Probst speculates that another competitor of Plaintiff's may have found Probst's address and hacked his personal network to make the postings appear to have been made by Probst. (Dkt. 71 at 2.) Any credibility determination will ultimately be made by the district court, but Probst's speculation is insufficient to refute Plaintiff's prima facie

---

[4] Google.com provided timestamps in "UTC" format. UTC stands for Coordinated Universal Time. *See Taylor v. United States*, 139 F. Supp. 2d 1201, 1202 (D. Utah 2001). The court notes that UTC times can be converted to EDT by subtracting four hours. *See Zinn v. United States*, 835 F. Supp. 2d 1280, 1287 (S.D. Fla. 2011).

evidence of contempt. Further, Probst's statements and conduct tend to suggest he is disinterested in complying with the district court's command.

Next, Probst cites to an article discussing a copyright case for the proposition that an Internet protocol address ("IP address") cannot be used to identify a person. (Dkt. 71.)  The article appears to refer to an unpublished decision in a case dismissed by the Southern District of Florida. *See Malibu Media, LLC, v. John Doe*, No. 14-cv-20213 (D. Fl. Mar. 19, 2014). As the title of that case suggests, the identity of the defendant was unknown. On the facts of that case, the court found that IP address information combined with geolocation software failed to establish evidence of the unidentified defendant's conduct in the forum. *Id.* There was no per se rule adopted that an IP address is inadmissible for any purpose. Here, Probst's identity is known to Plaintiff, and Probst's Internet provider has identified Probst as the person assigned the IP addresses at the time the complaints were made. As discussed above, Probst must refute this evidence, or come forward with evidence of his own to establish that he cannot withdraw the complaints identified.

## A. *Probst's email response to Etsy.com.*

Plaintiff's evidence discussed above makes Probst's email response to Etsy.com particularly troubling. After Probst sent his email purporting to withdraw his complaints, Etsy.com responded requesting additional information because it could find no complaints from kmprobst@yahoo.com and no Etsy user called Crazy ATV. (*See* Dkt. 66 at 5.) Probst responded:

> You are correct. I have never filed a complaint with you before. But there is an individual in the state of Utah, who possesses all of the signs and symptoms of a paranoid schizophrenic, who seems to think that I have. So I had to send this email[.] I'm sorry for wasting your time[;] have a blessed day.

(*Id.*) As discussed above, Plaintiff has submitted evidence that convinces this court that Probst, or a person working in concert with him, is responsible for the onegour Etsy complaint. Probst

has not refuted this evidence. Accordingly, Probst appears at this point to be deliberately defying the district court's order to withdraw his complaints.

Based on the foregoing, the court **RECOMMENDS** the district court order Probst to show cause why he should not be found to be in contempt, including a de novo review of the parties' evidence regarding Probst's alleged contempt. Given the standard of review at the hearing, each party should be prepared to provide evidentiary support for any argument they intend to make.

### b. Motion to compel

Probst has once again failed to comply with the district court's orders. Plaintiff requests that the court impose additional specific requirements on Probst to compel compliance with the court's permanent injunction order. To the extent Plaintiff seeks an order compelling compliance with the permanent injunction, the motion appears moot. Probst has been compelled to comply with the order, though he has failed to do so. Accordingly, the court **FINDS MOOT** the portion of the motion seeking to compel Probst to comply with the permanent injunction. Probst remains bound, as he has since July 3, 2014, to comply with the injunction. To the extent Plaintiff seeks modification of the injunction; such relief is best addressed by the district court after its review of its review of the evidence.

### III.   CERTIFIED FACTS

Consistent with the procedures set forth in the 28 U.S.C. § 636(e), the court certifies the following facts to the district court:

1. On July 3, 2014, the district court issued an order that included a permanent injunction imposing certain restrictions and requirements on Probst and Vinyl Access ("July 3 Order"). (Dkt. 24.)

2. The injunction required Probst,  and his "respective agents, employees, officers, successors, licensees, and assigns, and all persons acting in concert or participation with" Probst to:

> a. Cease from making any further complaints, including complaints containing allegations of copyright or other intellectual property infringement, to Amazon.com, Etsy.com, eBay.com, or any other reseller of CATV's products;
>
> b. Cease from making any further contact with Amazon.com, Etsy.com, eBay.com, or any other reseller of CATV's products in an effort to interfere with CATV's economic relations; and
>
> c. Formally withdraw, in writing, all complaints filed against CATV with Amazon.com, Etsy.com, eBay.com, and any other reseller of Plaintiff's products to which a complaint has been submitted regarding CATV's account and/or products.

(Dkt. 24.)

3. On July 16, 2015, Defendant Probst attempted to set aside the July 3 Order. (*See* Dkt. 26, 47–49, 62.)

4. On July 21, 2014, Plaintiff filed a motion to compel compliance with the injunction in the July 3 Order. (Dkt. 27.)

5. Upon this court's recommendation, the district court granted Plaintiff's motion to enforce compliance with the injunction in the July 3 Order on March 23, 2015, reminded Probst he was bound to comply with the July 3 Order, and instructed Probst to certify to the court within fourteen days that he has formally "withdrawn all complaints filed against CATV with Amazon.com, Etsy.com, eBay.com, and any other reseller of Plaintiff's products." (Dkt. 61.)

6. The first evidence appearing in the docket that demonstrates any attempt by Probst to comply with the July 3 Order is a March 29, 2015, email directed to each entity

mentioned in the district court's order: Amazon.com, eBay.com, and Etsy.com

purporting to withdraw Probst's complaints. (Dkt. 66 at 7.) The email states:

> I Kevin Probst, withdraw all complaints that I, Kevin Probst, have filed against Crazy ATV on the following Platforms: Amazon.com, eBay.com, Etsy.com. Any complaints filed by Kevin Probst are withdrawn. Please note, for your records, the email addresses that this email was sent to.

(*Id* (capitalization normalized)*.*)

7.  Probst has consistently used antagonistic language in his emails with Plaintiff and its counsel regarding compliance with court orders, including but not limited to:

    a.  "That is a bad decision you made Brett. I swear you will not recover from that. You will regret it forever. This is the end of our communication and your business." (Dkt. 27.)

    b.  "This is a very simple concept [counsel], and I know that you must have some degree of intellect to have passed the bar. So I encourage you to use that intellect." (Dkt. 69, Ex. A.)

    c.  "I'll ask you not to waste any[ ]more of my time with this nonsense based on your ludicrous assumptions and absolutely no facts." (*Id.*)

8.  Plaintiff received a copyright complaint made against its vendor account on Etsy.com on September 22, 2013, from a user called "onegour." On September 26, 2013, onegour again contacted Plaintiff and provided a list of Plaintiff's products that onegour claimed violated his copyrights. (Dkt. 22, Ex. B at 6.)

9.  Etsy.com provided a subpoena response indicating that user onegour (also known as Randy Geister) logged in from IP address 75.76.33.105 on September 26, 2013, at 11:28 p.m. Eastern Daylight Time ("EDT"); and from IP address 24.214.141.46 on September 22, 2013, at 3:04 p.m. EDT. (Dkt. 22, Ex. B at 4–5.)

10. Probst's Internet service provider, Knology, Inc., provided a subpoena response indicating that Probst was assigned IP address 75.76.33.105 from 10:46 p.m. EDT on September 26, 2013, until 11:16 p.m. EDT the following day. (Dkt. 22, Ex. C at 7.) The same subpoena response indicates that Probst was assigned the IP address 24.214.141.46 from 2:11 p.m. EDT on September 22, 2013, until the afternoon of the following day. (*Id.*)

11. Etsy identified onegour's email address as "onegour@gmail.com." (Dkt. 22, Ex. 1 at 4.)

12. In response to Plaintiff's subpoena, Google.com indicated that IP address 24.214.141.46 accessed the onegour@gmail.com email account at 2:23 p.m. EDT on September 22, 2013, and that IP address 75.76.33.105 accessed the email account at 10:59 p.m. EDT on September 26, 2013. (Dkt. 22, Ex. 1 at 8–9, 12.)

13. Probst submitted no evidence contrary to the records submitted by Plaintiff, though he does posit that another competitor of Plaintiff's may have found Probst's home address and compromised his personal network to make the postings appear to have been made by Probst. (*See* Dkt. 71 at 2.)

14. After Probst sent his email purporting to withdraw his complaints, Etsy.com responded to request additional information because it could find no complaints from kmprobst@yahoo.com and no Etsy user called Crazy ATV. (*See* Dkt. 66 at 5.) Probst responded:

> You are correct. I have never filed a complaint with you before. But there is an individual in the state of Utah, who possesses all of the signs and symptoms of a paranoid schizophrenic, who seems to think that I have. So I had to send this email I'm sorry for wasting your time have a blessed day.

(*Id.* (errors in original).)

## IV.      RECOMMENDATION

For the reasons discussed above, the court **RECOMMENDS** the district court order Probst to appear before it and show cause why he should not be adjudged in contempt.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object.  Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections.  Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 16th day of October, 2015.              By the court:

_____

Dustin B. Pead
United States Magistrate Judge

**Appendix**

CASE 1:13cv114 JUDGE ROBERT J. SHELBY

ANSWER TO DOCUMENT 68

ANSWER TO DOCUMENT 69

MOTION TO SET ASIDE DEFAULT JUDGEMENT

STATEMENT OPPOSING MOTION FOR DEFAULT JUDGMENT AND
ACCOMPANYING MEMORANDUM IN SUPPORT (AMENDED)

STATEMENT OPPOSING (PROPOSED) ORDER GRANTING SECOND MOTION
FOR DEFAULT JUDGMENT

MOTION TO DISMISS PLAINTIFFS COMPLAINT AND QUASH SERVICE OF
PROCESS

MOTION SEEKING FORMA PAUPERIS STATUS


CRAZY ATV INC

v

VINYL ACCESS LLC

**ANSWER TO DOCUMENT 68-** The default judgement should not be
reinstated for failure of a timely answer since my answer was sent during
the allotted time. My answer may not have been titled "ANSWER" because
I was not aware that it had to be titled as such, as I am not an attorney and
unfamiliar with the language and titles of the courts, however my answer
was still sent.

It seems that I am repeatedly bombarded with documents that contain the
exact information as the document before it, however I am required to
answer this "new document" simply because it says "amended".

Matthew Thayne knows that I am unfamiliar with the documents and thier

1

titles, so he constantly sends new documents in hopes that I will not answer in time or make a mistake such as a clerical error in the title so that he can have a default judgement. He does this because he knows that this is the only way he will get a judgement.

Bottom line- what I sent was the answer. And it was sent in the allotted time, so for these reasons the default judgement should be set aside. I also feel like the default judement may have been put into affect again because the judges seem to have been changed again, although I was not aware of this change. So what was sent to one judge was not sent to the new judge, and I beleive it was the new judge that activated this default judgement, as he was unaware of what had been sent to the previous judge and to Matthew Thayne. But Matthew Thayne knew that he had been answered and therefore should have come forth with the answer to the new judge. But I hardly expect that kind of honesty or depth of character to be given from Matthew Thayne.

### ANSWER TO DOCUMENT 69 STATEMENT OPPOSING RENEWED MOTION TO COMPEL DEFENDANT PROBST TO COMPLY WITH THE ORDER AND PERMANENT INJUNCTION AND FOR ORDER HOLDING PROBST IN CONTEMPT AND ACCOMPANYING MEMORANDUM IN SUPPORT.

### MOTION TO SET ASIDE DEFAULT JUDGEMENT

### STATEMENT OPPOSING MOTION FOR DEFAULT JUDGMENT AND ACCOMPANYING MEMORANDUM IN SUPPORT (AMENDED)

### STATEMENT OPPOSING (PROPOSED) ORDER GRANTING SECOND MOTION FOR DEFAULT JUDGMENT

### MOTION TO DISMISS PLAINTIFFS COMPLAINT AND QUASH SERVICE OF PROCESS

### MOTION SEEKING FORMA PAUPERIS STATUS

I see there was an order to show cause and now because of an amendment

2

of sorts it is now a request for contempt of court. Firstly, I have never willfully or repeatedly violated any court orders. I was asked to formally withdraw in writing all complaints with amazon, etsy, and ebay filed against crazy atv, and I have done that through an email that I sent everyone copies of. And I have never used pseudonyms with anyone. Desipite Matthew Thaynes repeated attempts to argue his "I.P. address identification argument" as he clings to this as his only evidence in this case, this still is not evidence that any of his accusations were the result of an action by myself. Wireless routers are often hacked, and these I.P. addresses obtained from hacked routers are often used to conceal someones identity. A bitter competitor of Crazy ATV could easily hack my wireless router needing only my physical address to do so, therefore making it look as if the claims were made by me. This could be a result of one of Crazy ATVs bitter competitors, or it could be the result of one of my bitter competitors. But it is a common practice and easily done. As a matter of fact my router was recently hacked and I had to replace it with a new one with new encrypted security info to block the hacker out. This can also happen to any of you if you use a wireless router at home. So for these reasons Matthew Thaynes "I.P. address identification argument" can not be used as evidence. Aside from my wireless router being hacked, there are many other reasons an IP address cannot identify a person. And below I have pasted a report and a reference on this topic.

Source:    https://torrentfreak.com/ip-address-not-person-140324/

**JUDGE: IP-ADDRESS IS NOT A PERSON AND CAN'T IDENTIFY A BITTORRENT PIRATE**

**BY ERNESTO ON MARCH 24, 2014 C: 94**

**NEWS**

**An important ruling in Florida has made it more difficult for copyright holders to extract cash settlements from alleged BitTorrent pirates.**

3

District Court Judge Ursula Ungaro dismissed a lawsuit filed by Malibu Media, arguing that the IP-address evidence can't identify the person who actually downloaded the pirated file.

ip-addressOver the past several years hundreds of thousands of alleged BitTorrent pirates have been sued by so-called 'copyright trolls' in the United States.

The rightsholders bringing these cases generally rely on an IP address as evidence. They then ask the courts to grant a subpoena, forcing Internet providers to hand over the personal details of the associated account holder.

The problem, however, is that the person listed as the account holder is often not the person who downloaded the infringing material. Although not many judges address this crucial issue early on, there are exceptions, such as the one raised by Florida District Court Judge Ursula Ungaro.

Judge Ungaro was presented with a case brought by Malibu Media, who accused IP-address "174.61.81.171" of sharing one of their films using BitTorrent without their permission. The Judge, however, was reluctant to issue a subpoena, and asked the company to explain how they could identify the actual infringer.

Responding to this order to show cause, Malibu Media gave an overview of their data gathering techniques. Among other things they explained that geo-location software was used to pinpoint the right location, and

4

**how they made sure that it was a residential address, and not a public hotspot.**

**Judge Ungaro welcomed the additional details, but saw nothing that actually proves that the account holder is the person who downloaded the file.**

**"Plaintiff has shown that the geolocation software can provide a location for an infringing IP address; however, Plaintiff has not shown how this geolocation software can establish the identity of the Defendant," Ungaro wrote in an order last week.**

**"There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district," she adds.**

END OF REPORT

So this is yet another hole in Matthew Thaynes "IP address" theory that he mistakenly calles evidence.

**Response to Page 4 line 14-15.** I have never lied to the court or to anyone else concerning this case.

**Response to Page 6 line 1-13.** When I first began selling products on Amazon, I was told by Amazon, that I needed to register my products with the copyright office if I intended to sell them on Amazons platform. That is what I did. I registered my items for sale with the copyright office, and the copyright office approved my registration. I thought that this is what

everyone had to do. But I certainly was not implying that I owned MARVEL COMICS, OR BATMAN, OR DC COMICS, OR APPLE COMPUTER INC. I was only trying to register for the rights or license to sell these types of products. I knew nothing about copyrights or brands or anything of that nature. So this was not done as a malicious attempt to harm anyone or thier business, but I was misinformed by an Amazon rep who probably misunderstood what I was seeking help for when I called Amazons customer service. Also there were no water marks on those images. And "vinyl lettering" is not a DBA, it is the product that we all sold. Thats like selling "Orange Juice" and claiming that since the name of your business is "Orange Juice" no one else is allowed to sell "Orange Juice" except for your business named "Orange Juice".

**Response to Page 6 line 14-28.** Matthew Thayne claims that this entity was formed on July 19, 2014. But this incident in question started long before I started Vinyl Access LLC. To prove this I have included an email from Matthew Thayne dated August 26 2013 referencing the date of the incident in question which was **January 22, 2013 and January 24, 2013**. Note: Vinyl Access LLC did not exist on the date of the incident in question.

PHILLIPS RYTHER & WINCHESTER ATTORNEYS AT LAW 124 SOUTH 600 EAST | SALT LAKE CITY, UT 84102 MAIN: 801.935.4935 | FAX: 801.935.4936 | WWW.PRWLAWFIRM.COM

MATTHEW D. THAYNE
August 26, 2013
*Direct (801) 935-4930*
mdt@prwlawfirm.com

***VIA EMAIL** (copyright@amazon.com; seller-performance@amazon.com; seller-evaluation@amazon.com)*
***CONFIRMATION VIA FEDERAL EXPRESS***
Amazon.com Legal Department
410 Terry Avenue North
Seattle, WA 98109-5210
Re: **Crazy ATV, Inc. v. Kevin Matthew Probst, et al.**
Dear Sir or Madam:
This law firm represents the interests of Crazy ATV, Inc. dba Wall Sayings Vinyl Lettering ("WSVL") in connection with its intellectual property matters. We write to inform you of a dispute between WSVL and another Amazon.com seller—Kevin Matthew Probst—and to seek your input as to how to proceed in order to best avoid disruptions to WSVL's business during this dispute. More particularly, because Mr. Probst has submitted at least two fraudulent copyright complaints against WSVL, and recently threatened to file more, this letter is intended to ensure that Amazon.com has sufficient information regarding Mr. Probst

and his actions before it acts on any further complaints that he may file.

WSVL has done business on Amazon.com for several years and has a five-star seller rating. Between about May of 2012 and about January of 2013, WSVL sold a product on Amazon.com titled "Birds on a Wire" (ASIN: B0085BSM42). In about October of 2012, WSVL became aware that products substantially identical to WSVL's "Birds on a Wire" products were being offered for sale on Amazon.com by an entity doing business under the name "Pro Vinyl." We have since discovered that Mr. Probst was involved with this entity and its selling of the knock-off "Birds on a Wire" products.

Between about April of 2009 and about January of 2013, WSVL also sold a product on Amazon.com titled "Family Like Branches on a Tree" (ASIN: B00280GMPC). Like the "Birds on a Wire" products, in 2012 Mr. Probst began offering for sale a product incorporating a design identical to WSVL's "Family Like Branches on a Tree" product. WSVL ordered the knock-off product from Mr. Probst and discovered that it did not match Mr. Probst's listing on Amazon.com. In response to discovering the knock-off products being offered by Mr. Probst, ... ... Shortly after obtaining a copyright registration for WSVL's works (U.S. Copyright Registration No. VA0001842803), Mr. Probst filed complaints with Amazon.com claiming that WSVL had violated his intellectual property rights by selling the "Birds on a Wire" and "Family Like Branches on a Tree" products. WSVL received notices from Amazon.com's "Seller Performance Team" on **January 22, 2013 and January 24, 2013**, respectively, indicating that these products had been removed from the Amazon.com website. Amazon.com Legal Department August 26, 2013 Page 2 of 3 PHILLIPS RYTHER & WINCHESTER

WSVL filed DMCA notices with Amazon.com and had these products removed from Amazon.com.

Very truly yours,

Matthew D. Thayne

cc: Kevin Matthew Probst (VIA EMAIL: kmprobst@yahoo.com)

Wall Sayings Vinyl Lettering (VIA EMAIL: vinylletteringstore@gmail.com)

Enclosures:

Complaint filed by WSVL against Kevin Matthew Probst and Vinyl Access, LLC

Correspondence between Kevin Matthew Probst and counsel for WSVL

Matthew Thayne also claims that income could be generated by Liberty Transportation Investment Group and Liberty Taxi Service. Liberty Transportation Investment Group and Liberty Taxi Service were businesses that I once owned. The heart of these two businesses were a handicapp taxi that i drove by day to take people to thier medical appointments and such. And a regular taxi that I drove by nite, to take people home from the bars and such. Both of the vehicles that I used for these businesses were lost in a house fire in January 2013. You can reference Columbus Govt. Center public

records dept to verify date of the fire.**(SEE ATTACHED PHOTOS**





When I lost my vehicles in the fire I did not have the resources to buy new vehicles, and the auto insurance did not cover them since they were lost in a house fire. The home owners insurance did not cover them because technically they were not part of the home. So I was forced to close the companies. So Matthew Thayne is lying when he claims Liberty Transportation Investment Group was only established within the last year. It has been more than two and a half years since that business was lost in the fire. **Matthew Thaynes disregard for the truth and his utter disrespect for the very court system in which he works are proven here.**

Note: On the same day that I lost my vehicles and my home in a house fire, I also lost my Amazon selling privledges due to repeated false complaints filed by "CRAZY ATVS VINYL LETTERING STORE" to Amazons Seller Performance Team. Perhaps it is I that should be in persuance of a lawsuit against Crazy ATV?


**Response to Page 7 line 1-27.** Again the date here proves that this event took place before Vinyl Access LLC was formed. But I didnt submit complaints to Amazon. I simply registered my items with them as I was told to do so by thier seller performance team.

I have never used pseudonyms with anyone. Desipite Matthew Thaynes repeated attempts to argue his "I.P. address identification argument" as he clings to this as his only evidence in this case, this still is not evidence that any of his accusations were the result of an action by myself. Wireless routers are often hacked, and these I.P. addresses obtained from hacked routers are often used to conceal someones identity. A bitter competitor of Crazy ATV could easily hack my wireless router needing only my physical address to do so, therefore making it look as if the claims were made by me. This could be a result of one of Crazy ATVs bitter competitors, or it could be the result of one of my bitter competitors. But it is a common practice and easily done. As a matter of fact my router was recently hacked

and I had to replace it with a new one with new encrypted security info to block the hacker out. This can also happen to any of you if you use a wireless router at home. So for these reasons Matthew Thaynes "I.P. address identification argument" can not be used as evidence. Aside from my wireless router being hacked, there are many other reasons an IP address cannot identify a person. And below I have pasted a report and a reference on this topic.

Source:   https://torrentfreak.com/ip-address-not-person-140324/

## JUDGE: IP-ADDRESS IS NOT A PERSON AND CAN'T IDENTIFY A BITTORRENT PIRATE

**BY ERNESTO ON MARCH 24, 2014 C: 94**

**NEWS**

An important ruling in Florida has made it more difficult for copyright holders to extract cash settlements from alleged BitTorrent pirates. District Court Judge Ursula Ungaro dismissed a lawsuit filed by Malibu Media, arguing that the IP-address evidence can't identify the person who actually downloaded the pirated file.

ip-addressOver the past several years hundreds of thousands of alleged BitTorrent pirates have been sued by so-called 'copyright trolls' in the United States.

The rightsholders bringing these cases generally rely on an IP address as evidence. They then ask the courts to grant a subpoena, forcing Internet providers to hand over the personal details of the associated account holder.

11

The problem, however, is that the person listed as the account holder is often not the person who downloaded the infringing material. Although not many judges address this crucial issue early on, there are exceptions, such as the one raised by Florida District Court Judge Ursula Ungaro.

Judge Ungaro was presented with a case brought by Malibu Media, who accused IP-address "174.61.81.171" of sharing one of their films using BitTorrent without their permission. The Judge, however, was reluctant to issue a subpoena, and asked the company to explain how they could identify the actual infringer.

Responding to this order to show cause, Malibu Media gave an overview of their data gathering techniques. Among other things they explained that geo-location software was used to pinpoint the right location, and how they made sure that it was a residential address, and not a public hotspot.

Judge Ungaro welcomed the additional details, but saw nothing that actually proves that the account holder is the person who downloaded the file.

"Plaintiff has shown that the geolocation software can provide a location for an infringing IP address; however, Plaintiff has not shown how this geolocation software can establish the identity of the Defendant," Ungaro wrote in an order last week.

12

"There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and ~~establishing whether that person lives in this district,~~" she adds.

END OF REPORT

So this is yet another hole in Matthew Thaynes "IP address" theory that he mistakenly calles evidence.

**Response to Page 8 line 8-9.** I dont know why you keep referencing this company call "BAD ASS COFFE COMPANY". I have never been affiliated with this company.

**Response to Page 8 line15-19.** I proved in an email that all complaints made by me Kevin Matthew Probst had been formally withdrawn. **Matthew Thayne if you have a case against a pseudonym, or another one of CRAZY ATVS competitors, then I suggest you pursue that case against them and not include it in a case against me.**

Matthew Thayne claims that I misinformed him when I stated that I knew no one by the name of Elisa Probst. Matthew Thayne claims that this is my mother. When infact I never misinformed anyone. My mothers name is Elisa Nave and it always has been. **Hence the name "Nave Designs" which Matthew Thayne later references and a possible source of my income when it was infact a business owned by my mother several years ago.** There still is no one by the name of Elisa Probst. So her last name was just another "hopefull guess" or a wrong assumption made by Matthew Thayne.

Matthew Thayne claims that I may generate income from "Nave Designs LLC" and from "Vinyl Acess LLC" when infact both of these companies, one belonging to my mother, and the other to me, when infact they neither one generate a single dollar of revenue. They once were thriving businesses that sold on Amazon, just as Crazy ATV does, but because of repeated false

13

accusations and claims made by Crazy ATV and Matthew Thayne Amazon suspended the selling accounts for both businesses. I have pasted the emails to both companies from Amazon as proof.

1.

----From: seller-performance-policy@amazon.com <seller-performance-policy@amazon.com>

Date: Thursday, October 9, 2014

Subject: Your Amazon.com selling privileges have been removed

To: "vinylaccess@gmail.com" <vinylaccess@gmail.com>

Hello,

We are writing to let you know we have removed your selling privileges, canceled your listings, and placed a temporary hold on any funds in your Marketplace Payments account. Any new selling accounts you open will be closed.

We took this action because it has come to our attention that you have listed items that may be in violation of our policy against intellectual property infringement.

We encourage you to take appropriate steps to resolve any pending orders. Note that any amounts paid as a result of A-to-z Guarantee claims and chargebacks may be deducted from your Marketplace Payments

14

account.

After 90 days, the hold will be removed and any remaining funds will be available per your settlement schedule. In addition, balance and settlement information will be available in the Payments section of your seller account. If you have questions about these funds, please write to payments-funds@amazon.com.

2.

----From: seller-performance-policy@amazon.com <seller-performance-policy@amazon.com>

Date: Thursday, May 1, 2014

Subject: Your Amazon.com selling privileges have been removed

To: "ebnave4@gmail.com" <ebnave4@gmail.com>

Hello from Amazon.

We are writing to let you know we have removed your selling privileges, canceled your listings, and placed a temporary hold on any funds in your Marketplace Payments account. Any new selling accounts you open will be closed.

We took this action because it has come to our attention that you have

15

**listed items that may be in violation of our policy against intellectual property infringement.**

**We encourage you to take appropriate steps to resolve any pending orders. Note that any amounts paid as a result of A-to-z Guarantee claims and chargebacks may be deducted from your Marketplace Payments account.**

**After 90 days, the hold will be removed and any remaining funds will be available per your settlement schedule. In addition, balance and settlement information will be available in the Payments section of your seller account. If you have questions about these funds, please write to payments-funds@amazon.com.**

So for all the reasons stated above I request the courts support in my

MOTION TO SET ASIDE DEFAULT JUDGEMENT

STATEMENT OPPOSING MOTION FOR DEFAULT JUDGMENT AND ACCOMPANYING MEMORANDUM IN SUPPORT (AMENDED)

STATEMENT OPPOSING (PROPOSED) ORDER GRANTING SECOND MOTION FOR DEFAULT JUDGMENT

MOTION TO DISMISS PLAINTIFFS COMPLAINT AND QUASH SERVICE OF PROCESS

MOTION SEEKING FORMA PAUPERIS STATUS

Kevin Probst

05/08/2015

16



**P** US POSTAGE & FEES PAID
PRIORITY MAIL
FR Env
COMMERCIAL BASE PRICING
0628000875369
FROM 31903
stamps.com
05/09/2015

## PRIORITY MAIL 2—DAY™

PO BOX 9008
COLUMBUS GA 31908

0006

**P** US POSTAGE & FEES PAID
PRIORITY MAIL
FR Env
COMMERCIAL BASE PRICING
0628000875
FROM 3
stamp
05/09/

## PRIORITY MAIL 2—DAY™

PO BOX 9008
COLUMBUS GA 31908

0000

C005

C006

SHIP TO:
MATTHEW THAYNE
124 SOUTH 600 EAST
SALT LAKE CITY UT 84102—1909



SHIP TO:
CRAZY ATV INC
1090 W 2180 N
SALT LAKE CITY UT 84116—2374



USPS TRACKING #

9405 5118 9956 2306 2686 41

USPS TRACKING #

9405 5118 9956 2306 2686 34

**P** US POSTAGE & FEES PAID
PRIORITY MAIL
FR Env
COMMERCIAL BASE PRICING
0628000875369
FROM 31903
stamps.com
05/09/2015

## PRIORITY MAIL 2—DAY™

PO BOX 9008
COLUMBUS GA 31908

0006

**P** US POSTAGE & FEES PAID
PRIORITY MAIL
FR Env
COMMERCIAL BASE PRICING
0628000875
FROM 3
stam
05/09/

## PRIORITY MAIL 2—DAY™

PO BOX 9008
COLUMBUS GA 31908

000

C001

C002

SHIP TO:
JUDGE ROBERT SHELBY
SUITE 10.220
351 W SOUTH TEMPLE
SALT LAKE CITY UT 84101



SHIP TO:
OFFICE OF THE CLERK
JUDGE DUSTIN B PEAD
351 SOUTH WEST TEMPLE STE 9—200
SALT LAKE CITY UT 84101—1946

USPS TRACKING #

USPS TRACKING #